(584 P.2d 1255)
No. 49,093

In the Matter of the Estate of John S. Coleman, Deceased.

Petition for review denied December 5, 1978.

Opinion filed October 6, 1978.

*Thomas L. Theis* and *Myron L. Listrom,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for the appellee and cross-appellant The Way College of Emporia.

*Robert L. Howard,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, and *Granville M. Bush,* of Bush & Bush, of Sterling, for the appellant Sterling College.

*Jack H. Greene* and *David W. Kennedy,* of Greene & Kennedy, of Wichita, for the appellant Phillip A. Little.

*Glenn D. Cogswell,* of Goodell, Cogswell, Stratton, Edmonds, Palmer & Wright, of Topeka, for the appellee American Cancer Society.

*Theodore B. Ice,* of Ice, Turner & Ice, of Newton, for the appellee Newton Presbyterian Manor, Inc.

Before ABBOTT, P.J., REES and SWINEHART, JJ.

SWINEHART, J.: This is an appeal from an order construing the residuary clause of the last will and testament of Dr. John S. Coleman, who died August 3, 1975. The case originated in the probate court of Sedgwick County. It was transferred to the district court pursuant to K.S.A. 1977 Supp. 59-2402a. At that hearing the district court was asked to construe the residuary clause to determine which of five parties was entitled to receive the residue of Dr. Coleman's estate. The five parties are Sterling College, The Way College of Emporia, Phillip A. Little, American Cancer Society and Newton Presbyterian Manor, Inc.

The will in question was executed on August 26, 1965, and a codicil (which is irrelevant to this appeal) was executed on January 19, 1968. It is unnecessary to set forth the will in its entirety. There were a number of specific bequests and devises made in the will. One clause contains six bequests to friends and relatives of Dr. Coleman, ranging in amounts from $1,000 to $5,000. This clause provides that if any of the named legatees predecease Dr. Coleman, the bequest shall lapse and pass under the residuary clause. The next clause contains a $10,000 bequest to the First Presbyterian Church of Wichita, where Dr. Coleman was a member and had served as a deacon and trustee for many years. Another clause establishes a $30,000 trust fund for scholarships at the University of Illinois Medical School. The next clause devises two pieces of real estate, one to Dr. Coleman's sister and one to his nephew, Phillip Little. Phillip Little is given a life estate in a quarter section of land, with the remainder to go to his children. The next clause establishes a $75,000 trust fund to be used for the college education of Phillip Little's children. Upon termination of the trust, the remainder of the corpus is to be distributed to the residuary legatees in the same proportion as they are to take under the residuary clause.

The residuary clause, set out below, is the only one involved in this litigation:

"I will and direct my hereinafter named executor to sell all of the rest, residue and remainder of my property, real and personal, at public or private sale, for such prices and upon such terms as it deems adequate, without the necessity of any court proceeding or authority, and my executor is authorized to execute any contracts, deeds, bills of sale, or other instruments necessary or desirable in connection with such sale or sales. When said property has been so converted into cash by my executor and my executor shall have paid the cash bequests herein, then the rest, residue and remainder of said cash shall be distributed as follows:

"1.   Two-fifths thereof to American Cancer Society, located at 219 East 42nd Street, New York, New York 10017;

"2.   Two-fifths thereof to the College of Emporia, a Presbyterian educational institution located at Emporia, Kansas; and

"3.   One-fifth thereof to the Presbyterian Manor, a Presbyterian Home for the aged, located at 1200 East Seventh Street, Newton, Kansas."

This clause, on its face, is clearly and precisely drafted. The problem that gives rise to this appeal is that the College of Emporia, which is bequeathed two-fifths of the residue of the estate, closed its doors to students on December 31, 1973.

The parties submitted a stipulated set of facts to the trial court. Oral testimony was also presented relating to the stipulated facts. The Way College of Emporia, which purchased the College of Emporia's physical assets and corporate charter, contended that it was entitled to the two-fifths share bequeathed to the College of Emporia. Sterling College urged the trial court to apply the doctrine of cy-pres to effect substitution of it as a two-fifths beneficiary under the clause. Phillip Little contended that the bequest had lapsed and that a lapsed residuary bequest should pass by intestacy. He is Dr. Coleman's only heir at law. The American Cancer Society and Newton Presbyterian Manor, Inc., the other residuary legatees, argued that the bequest to the College of Emporia should be divided proportionately between them.

Evidence presented at the trial shows that the College of Emporia was a Presbyterian liberal arts college. It offered traditional liberal arts courses, as well as some courses in Christian education. It was accredited and was authorized by the State Board of Education to grant academic degrees. It was affiliated with the Synod of Kansas of the Presbyterian Church of the United States of America.

The College of Emporia had suffered financial problems for many years before its closing. Evidence introduced at the trial

shows that in the early sixties, the college conducted an extensive fund-raising campaign. Numerous appeals were made to the members of the First Presbyterian Church of Wichita, of which Dr. Coleman was a member. Despite the College of Emporia's efforts, however, it was forced to close at the end of 1973. That same month, the College's corporate charter was cancelled for failure to file annual reports and pay annual fees.

Subsequently, the physical assets of the College of Emporia were sold to an organization called The Way International. The Way is a fundamentalist sect devoted to the study of the Bible. The Way College, unlike the College of Emporia, is not an accredited school, nor does it teach any courses other than Bible courses. It is not authorized to grant degrees. In the briefs, this Court is informed that The Way is still trying to convince the State Board of Education to accredit it. To date, it appears to have been unsuccessful.

Besides buying the physical facilities of the College of Emporia, The Way also purchased its corporate existence. On October 8, 1974, the College of Emporia's corporate charter was reinstated. On March 20, 1975, amended articles of incorporation were filed. All references to the Synod of Kansas of the Presbyterian Church have been deleted. The Way stipulates that it is in no manner affiliated with the Presbyterian Church.

Sterling College, which lays claim through the doctrine of cy-pres to the portion of the Coleman estate which would have gone to the College of Emporia, is in fact very similar to the College of Emporia. It is a small four-year liberal arts college, accredited and authorized to grant degrees, and it is under the supervision of the Synod of Kansas of the United Presbyterian Church of the United States of America.

After considering the evidence, the trial court ruled that the American Cancer Society and the Newton Presbyterian Manor, Inc., were entitled to share proportionately the lapsed legacy. The Way College, Sterling College and Phillip Little appeal, contending respectively that (1) the court erred in ruling that the gift lapsed, because The Way College is the College of Emporia's successor and is therefore entitled to the bequest; (2) the court erred in refusing to apply the doctrine of cy-pres; and (3) the court erred in ruling that the lapsed residuary legacy should pass to the other residuary legatees rather than Dr. Coleman's heir at law.

The appellees, the American Cancer Society and the Newton Presbyterian Manor, Inc., contend on appeal that the trial court's ruling was correct and should be upheld by this Court.

We first consider the argument of The Way College that it is entitled to take the two-fifths share of the residue of the Coleman estate which was bequeathed to the College of Emporia. The argument is based on two contentions: (1) that The Way College, having taken the College of Emporia's corporate charter, is exactly the same legal entity as the College of Emporia and is therefore entitled to take the bequest; and (2) that the words "a Presbyterian educational institution located at Emporia, Kansas" are words of description, not limitation.

The Way cites *In re Will of Barker,* 162 Ohio St. 531, 124 N.E.2d 421 (1955), in support of the proposition that the phrase "a Presbyterian educational institution" is merely precatory language and does not impose a limitation on the gift. In that case, the Ohio Court of Appeals held that the language "The Christian Church of Chardon, Ohio, as now organized and functioning" should not be interpreted so as to cause a lapse of the testamentary gift, even though the Christian Church of Chardon had consolidated with another church before the date of the testator's death. The Ohio Supreme Court, affirming the decision of the Court of Appeals, noted that words of limitation impose a condition on the vesting of the legacy, whereas words of description do not.

The Way also cites *In re Estate of Cribbs,* 180 Kan. 840, 308 P.2d 111 (1957), where the Kansas Supreme Court said:

"It is also well established that a gift in clear terms cannot be taken away or diminished by later obscure and ambiguous provisions or mere precatory language. To diminish or encumber an absolute gift, it is necessary to find or supply language in the later clause equally as plain and unequivocal as in that of making the gift, expressing an intention to limit the devise already made. (69 C.J. 114, Wills, § 1158; *Donohue v. Skinner,* 118 Kan. 215, 234 Pac. 1000.)

"Words in a will which are merely expressive of a desire or intention on the part of the testator, and are merely advisory or precatory in character, do not amount to a testamentary disposition, or control or alter express dispositions ·in the will, unless it is apparent that it was the testator's intention that such words of desire ·or intention should be mandatory, and then only to the extent fixed by testator's dominant purpose. (69 C.J. 78, Wills, § 1132.)" p. 843.

Other Kansas cases which stand for the proposition that a clearly stated gift may not be abrogated by implication include *Meyer, Executor v. Benelli,* 197 Kan. 98, 415 P.2d 415 (1966), and

*In re Estate of Kuhn,* 208 Kan. 292, 491 P.2d 937 (1971). In *Benelli,* the Court held that a will provision which gave a life estate in the house and household goods to the testator's widow, but provided that the house should be given to the residuary legatees in the event that she did not wish to live there, did not by implication divest her of title to the household goods also if she did not live in the house. In *Kuhn,* the Court held that a testamentary provision benefiting all of the testator's employees who were working for him at the date of his death and who were beneficiaries of the Kuhn Trust No. 2 created a clear, express modification that excluded the plaintiff, who was an employee at the date of Kuhn's death but who was not a beneficiary of the trust.

In 80 Am. Jur. 2d, Wills § 1549, p. 610, it is said: "The intention to create a condition in a will must clearly appear, for the courts will not construe a testator's words as importing a condition if a different meaning can be fairly given to them. . . ."

In spite of the strength of the rule that the intent to create a condition or limitation to the vesting of a gift must clearly appear in a will, we cannot accept The Way's argument that the language is precatory. When Dr. Coleman penned the words "a Presbyterian educational institution" he clearly wished to limit the gift in two respects: the gift was to go to a Presbyterian institution and that institution was to be devoted to educational purposes. Although The Way College is an educational institution, it fails to meet the other necessary condition, because The Way specifically disavows any affiliation with the Presbyterian Church.

Furthermore, even if this language is deemed to be only words of description, it is obvious that The Way College does not fit the description. It is an entirely different educational institution, having changed the faculty, course offerings and religious affiliation. We cannot accept The Way's argument that the fact that it is operating under the corporate charter formerly held by the College of Emporia, which it revived and reinstated pursuant to K.S.A. 17-7002, means that it is the same legal entity and therefore legally entitled to the bequest.

In opposition to The Way's position on this point, other parties have cited *Gladding v. Saint Matthew's Church,* 25 R.I. 628, 57 A. 860 (1904), and *Duncan v. Higgins,* 129 Conn. 136, 26 A.2d 849 (1942). Both of these cases involve charitable religious corpora-

tions which merged or consolidated with other charitable corporations before the death of the testators. In both, it was held that the original organization no longer existed and that the new corporation, created by the merger, could not take under the will. The Way seeks to distinguish these cases because they involve merger, and here there was no merger. This analysis makes little sense, for the effect of what happened in this case was to completely obliterate the College of Emporia.

The Way also relies on K.S.A. 17-1738, which provides that the merger or consolidation of one or more charitable corporations shall not cause the lapse of a gift, devise or bequest. The fallacy of this argument lies in the fact that there was no merger between The Way and the College of Emporia, so the statute is inapplicable.

A Kansas case which is pertinent to the question is *Daughters of American Revolution v. Washburn College,* 160 Kan. 583, 164 P.2d 128 (1945). In that case the D.A.R. had established a scholarship trust fund at Washburn College. When Washburn College became Washburn Municipal University, the D.A.R. sought to take back the trust fund. The Supreme Court, relying on the parties' stipulations that Washburn Municipal University was conducting the same educational institution, with the same functions, advantages and opportunities as did Washburn College, refused to terminate the trust fund. The case is clearly distinguishable from the one at hand, for much more than a name change was involved here.

The question is controlled by the principle enunciated in *People v. Braucher,* 258 Ill. 604, 101 N.E. 944 (1913), where it was said:

". . . To give the fund to some religious organization or church inculcating religious beliefs differing from those of the Universalist society would not be carrying out the intentions of the donors. . . ." p. 610.

The Kansas Supreme Court has voiced a similar rule in *In re Estate of Freshour,* 185 Kan. 434, 345 P.2d 689 (1959), when it said:

". . . As the term 'church' imports an organization for religious purposes, a gift to a church or a church society by name, without declaration or restriction as to the use to be made of the subject matter of the gift, must be deemed to be a gift for the promotion of the purposes for which the church was organized. . . ." pp. 443-444.

It is clear that Dr. Coleman intended to promote the purpose for which the College of Emporia existed: liberal arts education, carried out under the auspices of the Presbyterian Church. To permit The Way College, which provides neither a liberal arts education nor Presbyterian leadership, to take the bequest would indeed be, as the trial court stated, an exaltation of form over substance.

We next consider the argument presented by Sterling College that the trial court erred in refusing to apply the doctrine of cy-pres to the lapsed gift, substituting it for the College of Emporia as a beneficiary under the Coleman will. The cy-pres doctrine has been recognized in a number of Kansas cases, but has yet to be applied in a reported case. Sterling College submits that this is because Kansas Courts have not been presented with a proper set of circumstances to justify application of the doctrine, but it argues that the case at hand does present such a set of circumstances.

The doctrine of cy-pres permits a court to implement a testator's intent and save a gift to charity by substituting beneficiaries when the named charitable beneficiary is unable to take the gift. In order for the doctrine to apply, several conditions must be met. First, the gift must be to a charitable organization for a charitable purpose. Second, it must be impossible, impractical or illegal to carry out the donor's stated charitable purpose. Finally, it must appear that the donor had a general charitable intent. The fundamental concept of the doctrine is that a donor may have a general charitable intent, and that the particular charitable institution he has designated as recipient of the gift is only an agent for effectuating that gift. Therefore, when it becomes impossible for the gift to take effect exactly as the donor specified, the court must look for another agent, as nearly like the designated one as possible, that will receive the gift and effectuate the general charitable intent expressed in the will or gift instrument.

In the case at hand, it is indisputable that the gift to the College of Emporia was a gift to a charitable institution for a charitable purpose. It is also beyond doubt that it is impossible for the College of Emporia to take the gift. Further, there appears to be no disagreement that *if* the doctrine of cy-pres is to be applied, Sterling College is the logical recipient, for it is the only other Presbyterian liberal arts college in the state of Kansas, and its

curriculum, philosophy and educational status is almost identical to that of the College of Emporia. However, the question is whether Dr. Coleman had a general charitable intention to benefit Presbyterian higher education, or whether he had a narrow, special intention to benefit the College of Emporia, and no other Presbyterian college.

Sterling College asserts that the modern tendency is to presume a general charitable intent in any charitable gift, and to require that this presumption be specifically negated by either the gift instrument or extrinsic evidence. Bogert, Trusts & Trustees, § 436 (rev. 2d ed. 1977); *Trammell v. Elliott,* 230 Ga. 841, 199 S.E.2d 194 (1973); *Montclair Nat. Bk. & Tr. Co. v. Seton Hall Col. of Med.,* 90 N.J. Super. 419, 217 A.2d 897 (1966).

No Kansas cases have been located in which the Court applied cy-pres to substitute charitable donees. The doctrine is recognized in the state, however. In *Shannep v. Strong,* 160 Kan. 206, 160 P.2d 683 (1945), the Court discussed the doctrine in some detail before deciding that it should not be applied. In that case, the testator made specific bequests to the Methodist Episcopal Church and the United Brethren Church in Burns. After the Burns United Brethren Church ceased to exist, another Brethren Church in the area asked the Court to apply the doctrine of cy-pres to transfer to it title to the land devised to the Burns church. In determining that the testator's intent was to benefit two local churches in his old home town, rather than to create a trust for general charitable, religious purposes, the Court considered the following factors: the bulk of his estate was given to his wife, not charity; he did not give the church the land outright, but rather created a trust with a local resident as trustee; he made no mention of the governing bodies of the two churches, but rather specifically designated the local churches as beneficiaries; and he had spent most of his life as a farmer in the small community at Burns. On the basis of these facts, the Court assumed he intended to benefit his friends and neighbors in the community through benefiting the local churches.

Sterling College urges this Court to find that Dr. Coleman did in fact intend to benefit Presbyterian higher education in general by the bequest to the College of Emporia, and thus to find that the doctrine of cy-pres should be applied. Sterling College points to the following facts in support of this contention:

1. The will contains no gift-over or reversionary provisions, which has been considered a factor evincing a general charitable intent. *In re Estate of Tomlinson*, 65 Ill. 2d 382, 359 N.E.2d 109 (1976).

2. The gift was made to the College of Emporia by name, and a gift made to a charity *by name*, without specification, reservation or limitation as to its use is presumed to have been made for the objects and purposes for which the charity was founded. *In re Estate of Harrington*, 151 Neb. 81, 36 N.W.2d 577 (1949); *In re Estate of Freshour*, supra.

3. The bulk of the Coleman estate was bequeathed to charities ($600,000 in the residue, $10,000 to the First Presbyterian Church in Wichita, $30,000 to the University of Illinois Medical School), which has been held to be an indication of general charitable intent. *Shannep*, supra; *Miller v. Mer.-Safe Dep. & Tr. Co.*, 224 Md. 380, 168 A.2d 184 (1961).

4. Dr. Coleman made specific bequests and devises to family and friends, thus indicating that he wanted what had not been set aside to individuals to be used for charitable purposes.

5. Several will provisions indicate that Dr. Coleman was interested in Presbyterianism and higher education. He made bequests to two Presbyterian institutions other than the College of Emporia - the Presbyterian Church in Wichita and the Presbyterian rest home in Newton. Will provisions that evince an interest in higher education are the bequest to the University of Illinois Medical School and the educational trust for Phillip Little's children. The trust provisions specify that the funds can only be used at accredited colleges. Thus, Sterling reasons, the words "a Presbyterian educational institution" are a clear expression of a general intent to benefit Presbyterian higher education, and Dr. Coleman's intent can best be effectuated by giving the money to the only other Presbyterian liberal arts college in the state.

6. Extrinsic evidence shows that Dr. Coleman had no special personal relationship to the College of Emporia, other than the fact that he was probably made aware of its financial need through the fund drive conducted in the early sixties. In fact, there is no evidence that Dr. Coleman had any special personal relationship with any of the three named residuary legatees. This, Sterling College argues, is evidence that he had a general intent to

benefit charity, rather than a desire to benefit these particular institutions.

Balanced against these facts which favor the finding of a general charitable intent is one crucial fact which the court below relied upon in ruling that there was no general charitable intent. That is the fund drive conducted by the College of Emporia in the early sixties. Dr. Coleman, being very active in his church's affairs during that period, was without doubt aware of and concerned about the financial plight of the college. The fact that his will was executed in 1965, shortly after the fund-raising campaign, bolsters the theory that he named the College of Emporia as a residuary legatee with the specific thought of aiding that single, particular Presbyterian college in its time of financial hardship. Also, we note that although there was no evidence of a special personal relationship between Dr. Coleman and the College of Emporia (that is, he was not an alumnus or trustee, for example), there was a special personal relationship between him and the other named beneficiaries which Sterling points to to prove that he was interested in Presbyterianism and higher education. He was very active in the individual church to which he bequeathed $10,000; he had graduated from the University of Illinois Medical School; and the $75,000 college trust fund was for his nephew's children. These facts lend support to the theory that he wished to benefit the College of Emporia; rather than Presbyterian higher education in general.

We decline to create a presumption favoring the application of cy-pres, as Sterling College urges us to do. We think it most consistent with Kansas cases on the question to hold that the entity which seeks application of the doctrine has the burden of demonstrating, either by extrinsic evidence or by evidence within the will itself, that the donor was possessed of a general charitable intent when he chose the named beneficiary. We think that the presumption favoring charitable gifts, the presumption against intestacy and the fundamental duty of a court to implement the intent of the testator adequately protect charitable gifts in this jurisdiction.

The evidence presented at the trial, as well as evidence within the will itself, was sufficient to support the trial court's determination that Sterling College had failed to establish the testator's general charitable intent. The trial court's refusal to apply the doctrine of cy-pres will not be disturbed on appeal.

The final question to be resolved is to whom the lapsed portion of the residuary estate should go. Phillip Little, the sole surviving heir of the decedent, urges this Court to adopt the position that a lapsed residuary bequest should pass by intestacy.

The cases of *Corbett v. Skaggs,* 111 Kan. 380, 207 Pac. 819 (1922), and *In re Estate of Sowder,* 185 Kan. 74, 340 P.2d 907 (1959), are dispositive of the issue in this jurisdiction. These cases definitely establish that the rule in Kansas is that a lapsed residuary bequest does not pass by intestacy if there are any other members of the residuary class that can take the gift. This doctrine is contrary to the English common law rule, which is still the majority rule in the United States today, that a lapsed residuary gift passes by intestacy. 80 Am. Jur. 2d, Wills § 1695, p. 749. The difference between the Kansas rule and the majority rule was discussed in *Corbett,* supra. There it was noted that the application of the English rule has the effect of defeating the testator's intent in nearly every situation where it is applied. In *Corbett,* the Kansas Supreme Court set forth the law as it exists today and the rule was stated as follows:

> "We regard the rule that lapsed shares of deceased residuary legatees shall be treated as intestate property as in direct conflict with the one to which this court is definitely committed—that the actual purpose of the testator, so far as it can be ascertained, must be given effect. The presumption against intestacy of any part of the estate is a means of carrying out this policy which is disregarded by taking lapsed legacies out of the residue for the benefit of those who would inherit from the decedent in the absence of a will. The reasons for allowing lapsed specific legacies to fall into the residue apply with equal force in favor of allowing all the residue to go to the surviving residuary legatees in the case of the death of one of them, instead of turning over a part of it to persons for whom other provision had been made, or who had not been referred to in the will at all. The statement sometimes made in support of the latter practice—that the share of a deceased residuary legatee cannot fall into the residue because it is itself a part of the residue—appears rather to play upon words than to point out any real difficulty. The result of these views is the approval of the ruling of the court distributing the residue of the estate among the residuary legatees who survived the testator." p. 386.

Little endeavors to distinguish these two cases from the one at hand on the grounds that the residuary legatees in *Corbett* and *Sowder* were individuals, not charitable corporations. We find this distinction to be without merit. The same reasons for dividing the lapsed gift among other residuary legatees (that is, the

presumption against intestacy and the courts' duty to carry out the intent of the testator, who chose to limit or exclude his heirs' participation in his estate) apply with equal force whether the named residuary legatees are individuals or corporations.

The decision of the trial court, dividing the lapsed gift proportionately between the American Cancer Society and the Newton Presbyterian Manor, is affirmed.