No. 65,136
In the Matter of the Estate of Chester D. Crawshaw.
(819 P.2d 613)

Opinion filed October 25, 1991.

*Richard D. Ewy*, of Foulston & Siefkin, of Wichita, argued the cause, and *Timothy B. Mustaine*, of the same firm, was with him on the briefs for appellant Salvation Army of Wichita.

*Daniel K. Diederich*, of Kennedy, Berkley, Yarnevich & Williamson, Chartered, of Salina, argued the cause, and *Thomas J. Kennedy*, of the same firm, was with him on the brief for appellee Marymount Memorial Educational Trust Fund.

*Paul S. Gregory*, of Gregory & Gregory, of Osborne, argued the cause and was on the briefs for appellee Paul S. Gregory, Administrator with will annexed, of the Estate of Chester D. Crawshaw.

The opinion of the court was delivered by

SIX, J.: This case involves the application of the cy pres doctrine to a testamentary trust. We are presented with a first impression review of K.S.A. 1990 Supp. 59-22a01, which codified the cy pres doctrine judicially recognized by this court.

The residuary legatee contending charities are the Marymount Memorial Educational Trust Fund (MMETF) and the Salvation Army.

The Salvation Army appeals, contending the district court erred in applying the cy pres doctrine. The Salvation Army reasons that the testamentary trust language evidenced a specific charitable intent to benefit students at Marymount College.

The Court of Appeals disagreed and affirmed the district court's application of cy pres. *In re Estate of Crawshaw*, 15 Kan. App. 2d 273, 806 P.2d 1014 (1991). We granted the Salvation Army's petition for review.

Although the cy pres doctrine has been previously recognized in this jurisdiction, it receives its first application in the case at bar.

We shall address whether the district court erred: (1) in finding a general charitable intent in the testamentary trust and applying the cy pres doctrine codified by K.S.A. 1990 Supp. 59-22a01; and (2) in selecting MMETF to administer the trust.

We affirm the application of the cy pres doctrine and the selection of MMETF; however, we modify the trial court's ruling concerning the administration of the Crawshaw trust by MMETF and its trustee.

## Facts

Chester D. Crawshaw bequeathed the bulk of his estate to two residuary beneficiaries: the Salvation Army with its Kansas Office at Wichita, Kansas (15% of residue outright) and Marymount College located at Salina, Kansas (85% of residue in trust).

Crawshaw died testate on May 4, 1989. Paul S. Gregory was appointed administrator with will annexed. Crawshaw's will designated Marymount as trustee of a testamentary trust with a purpose to provide loans to nursing and other students at Marymount. Because Marymount ceased operation on June 30, 1989, it filed a petition for an order directing administration of the trust. Alleging that Crawshaw manifested a general charitable intent, Marymount requested the district court to apply the cy pres doctrine as set forth in K.S.A. 1990 Supp. 59-22a01. Marymount also requested the transfer of Crawshaw's testamentary trust funds to MMETF.

The Salvation Army: (1) denied general charitable intent; (2) objected to MMETF as a proper successor trustee; (3) alleged Crawshaw did not manifest charitable intent to benefit students attending colleges other than Marymount; and (4) asked the court to determine that the bequest should be distributed to the Salvation Army as the remaining beneficiary of Crawshaw's residuary estate.

Gregory alleged that Crawshaw had general charitable intent and that the bequest to Marymount is impossible to distribute. Gregory sought a determination from the district court as to the proper entity to receive the bequest.

Fort Hays State University Endowment Association (FHSUEA) filed a petition for order directing administration of the trust. FHSUEA also requested transfer of the funds of Crawshaw's testamentary trust to FHSUEA under K.S.A. 1990 Supp. 59-22a01 to be administered for the benefit of Fort Hays State University students. The trial court denied the petition of FHSUEA.

FHSUEA is not a party to this appeal.

## Stipulation

The parties agreed to the following stipulated facts:

"1. Chester D. Crawshaw, a resident of Osborne, Kansas, died testate on May 4, 1989. On May 12, 1989 his Last Will and Testament (attached

as Exhibit 'A') was admitted to probate in Osborne County District Court, Probate Division. (Petition to Probate Will). Paul S. Gregory was appointed as administrator with Will annexed. (Letters Testamentary).

"2. The Last Will and Testament of Chester D. Crawshaw provides for the distribution of the personal effects of the deceased, and further provides for certain legacies to four individuals, said legacies totaling $350.00. (Last Will and Testament). The residuary estate is valued in excess of $140,000.00. (Inventory and Appraisement).

"3. Upon distribution of these bequests and legacies, the Will directs that the personal property and real property remainder of the estate be sold and converted to cash and that the proceeds be distributed as follows:

"A. I direct that said Executor first pay all of my just debts, including my funeral expenses and expenses of my last sickness, and the costs of administering my estate, and all legacies provided for by this, my Last Will and Testament.

"B. I give, devise and bequeath fifteen percent (15%) of the rest, residue and remainder of the funds, proceeds and property of my estate to the Salvation Army, with Kansas office at Wichita, Kansas, to be used by it as it shall deem fit, without any restrictions whatever.

"C. I give, devise and bequeath the remaining eighty-five percent (85%) of the rest, residue and remainder of the funds, proceeds and property of my estate to Marymount College, located at Salina, Kansas, in trust, or in the event that said college does not have the legal capacity to accept and administer the herein created trust, then, in trust, to the official Board or Association of said college having the legal capacity to accept and administer the herein created trust, in any event hereinafter referred to as Trustee, and that said trust is created for the purposes, and subject to the conditions, hereinafter stated:

"1. That such trust fund, with its accretions, shall perpetually be called and known as the 'Mary Anna and Chester D. Crawshaw Trust Fund'.

"2. That said trust fund shall be paid to said legatee and devisee by my Executor at the time of the final settlement of my estate.

"3. The funds herein provided for may be loaned to students in the nursing department of said college. If there are no eligible candidates in said nursing department for this fund in any academic year, then the administrators may grant a loan to any other student or students attending said college.

"4. The administration of the fund shall be left entirely to the Trustee.

"5. Any and all loans made from said fund shall be evidenced by a note for the amount, and stating the terms of such loan, and signed by the person receiving such loan. Any such note shall not bear interest during the time such loan recipient is in regular attendance at said college, and is satisfactorily carrying a normal school load. The note of any loan recipient shall draw interest as shall be fixed by the Trustee, and shall bear interest from date of graduation of such loan recipient, or from the time any loan recipient shall fail to attend, or shall withdraw from, said college, or from the time any loan recipient shall fail to make grades acceptable, or required, for

graduation. The principal of each note, with interest, shall be due and payable in four equal annual installments, following the graduation of said loan recipient from college, or from the date of his or her withdrawal from college, or from the end of the semester in which he or she fails to make satisfactory passing grades. For good cause shown, the Trustee may extend the time of payment of any note. When interest is received on any note, it shall be added to, and become a part of, the principal of said trust fund, and shall be used in the same manner as the original amount. Additions to the trust fund may be made from time to time by any person, persons, firms or corporations desiring to do so. (Last Will and Testament of Chester D. Crawshaw).

"4. Chester D. Crawshaw was not Catholic but his deceased wife was Catholic and they were married in the Catholic Church. Chester D. Crawshaw received a Methodist burial service. Chester D. Crawshaw was not a Marymount College alumni, director, employee, former employee, teacher, or former teacher, nor is it known that he had any other type of special personal relationship with Marymount College.

"5. Effective June 30, 1989 Marymount College of Kansas terminated its nursing department and all other departments, programs and curricula offered at its campus in Salina, Kansas. (Petition of Marymount College, Par. 5).

"6. Marymount College of Kansas is now and at all times pertinent herein and has been a not-for-profit Kansas corporation. Although its Articles of Incorporation were forfeited on March 15, 1989 for failure to timely file its annual report, its Articles of Incorporation were renewed and revived in accordance with K.S.A. 17-7002 and K.S.A. 17-6003 with the same force and effect as if said Articles of Incorporation had not been forfeited. Attached hereto as Exhibit 'B' is a Certificate of Good Standing issued by the Secretary of State of Kansas.

"7. The termination of the nursing department and other departments and academic programs at Marymount College of Kansas make the Decedent's bequest to Marymount College impossible and impracticable of fulfillment, and the Decedent makes no provision for any alternative plan of disposition in the event Marymount College of Kansas should cease operations as an institution of higher learning. (Petition of Marymount College, Par. 5).

"8. The Marymount Memorial Educational Trust Fund (hereinafter referred to as 'MMETF') was established on September 13, 1989 by and between Marymount College of Kansas and George K. Fitzsimons, Bishop of the Roman Catholic Diocese of Salina in Kansas. (Petition of Marymount College, Par. 7; and MMETF Trust Agreement (Exhibit 'C')).

"9. On September 19, 1989 Marymount College petitioned the Saline County District Court and obtained an Order that the MMETF Trust Agreement was a proper and suitable trust arrangement to carry out the general charitable intention of those settlors and testators of certain endowment and scholarship funds specifically identified by name in the Exhibit 'A' to Mary-

mount College's petition therein, as well as the general charitable intention of the settlors and testators of any other separate endowment or scholarship fund which may be held by Marymount College for which no alternative plan of disposition was provided. (Petition of Marymount College, Par. 7; Marymount College Petition filed in Saline County District Court (Exhibit 'D'); Order of Saline County District Court (Exhibit 'E')).

"10. The Mary Anna and Chester D. Crawshaw Trust Fund had not yet been funded when the Marymount Educational Trust Fund agreement was signed. Therefore, the Mary [Anna] and Chester D. Crawshaw Trust Fund was not one of those trust funds named in the Exhibit 'A' list attached by Marymount College to its petition to the Saline County District Court and incorporated by reference in the Order thereto. (Petition of Marymount College, Par. 7; Marymount College Petition filed in Saline County District Court (Exhibit 'D'); Order of Saline County District Court (Exhibit 'E')).

"11. FHSU Endowment Association is a not-for-profit corporation and the objects and purposes to be transacted and carried on by said Endowment Association are as follows: "To raise funds for the purposes for which this corporation is created; to support educational undertakings at Fort Hays State University and to receive and hold in trust any property, real and personal, given, devised, bequeathed, given in trust, or in any other way transferred to this corporation for the use and/or benefit of Fort Hays State University, or of any student or employee therein as such, or of any school, division, department or branch thereof or for the carrying on at said institution of any line or work, teaching or investigation which the donor, grantor or testator may designate (Petition of FHSU Endowment Association, Par. 8).

"12. Fort Hays State University has an established School of Nursing that offers both a bachelors and a masters degree in nursing. (Petition of FHSU Endowment Association, Par. 9)."

## The Trial Court's Ruling

The district court found that Crawshaw had general charitable intent to benefit nursing and other students. The trial judge reasoned:

"[T]his will does not give the money to any college, but does create its own separate trust fund and puts a name on it, indicating that these funds are to be provided under the name of the Crawshaws and given out in that manner. The Court also finds that the method of giving the money is charitable in nature. Even though it's intended to draw some interest, it's still only to guarantee that the fund continues and is able to provide for its existence in the future. The Court finds that the Crawshaws did not have any particular—neither one of them were graduates of Marymount College. It truly was his intent to benefit nursing students and other students. The Court finds general charitable intent by the nature of his will."

The district court then found that MMETF was the appropriate entity to administer the trust.

## Scope of Review

Our scope of review is de novo. The facts were submitted by stipulation. The construction of a written instrument is a question of law. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 31, 744 P.2d 840 (1987).

## The Kansas Rule

The testamentary trust in question contained no alternate disposition in the event the bequest lapsed or became void. In Kansas, a lapsed or void bequest falls into the residuum and will be disposed of by the residuary clause, if one has been provided. *Trustees of Endowment Fund of Hoffman Memorial Hosp. Ass'n v. Kring*, 225 Kan. 499, 506, 592 P.2d 438 (1979). Crawshaw's will contained a residuary clause with two provisions: the first was a bequest of 15% of the residue outright to the Salvation Army; the second was a bequest of 85% of the residue creating the trust that is the subject of this action. If the trust fails, all proceeds would be distributed to the remaining residuary legatee, the Salvation Army.

## Contentions of the Parties

The Salvation Army asserts that the will unambiguously indicates Crawshaw's specific charitable intent to benefit only students at Marymount. Therefore, it contends, the district court and the Court of Appeals erred in applying rules of judicial construction and in looking beyond the provision of the will establishing the testamentary trust.

The Salvation Army relies on the testamentary trust language in the will. Clauses C.3. and C.5. of Crawshaw's will (set out in the stipulation) refer to "said college." The Salvation Army argues that the C.3., C.5. provisions unambiguously indicate Crawshaw's intent to benefit nursing and other students *only at Marymount College.* The Salvation Army suggests it is inappropriate to look beyond this language. If we disregard these limitations, the Salvation Army reasons, we would not be construing Crawshaw's will but constructing a new one, which we should not do.

Marymount and Gregory argue that both the district court and the Court of Appeals appropriately found that Crawshaw had general charitable intent and applied the cy pres doctrine, as codified by K.S.A. 1990 Supp. 59-22a01. They contend that it is appropriate to look beyond the specific will provision creating the testamentary trust to determine Crawshaw's intent. They also contend that an examination of the will and extrinsic evidence of Crawshaw's relationship with Marymount indicate that Crawshaw had general charitable intent to facilitate higher education. Marymount was merely an agent to effect Crawshaw's gift.

Marymount and Gregory assert that Crawshaw's intent may not be determined from a single provision. We are encouraged to look at the entire will. They emphasize other provisions in the will which they assert demonstrate Crawshaw's general charitable intent.

Our attention is invited first to the opening paragraph of the testamentary trust:

"[T]o Marymount College, located at Salina, Kansas, in trust, or, in the event that said college does not have the legal capacity to accept and administer the herein created trust, then, in trust, to the official Board or Association of said college, having the legal capacity to accept and administer such trust."

This provision indicates, according to Marymount and Gregory, that Crawshaw did not want the trust to fail because of a problem with the named trustee. They advance the theory that Crawshaw named Marymount as an agent to carry out his purpose of furthering higher education. Marymount asserts that Clause C.3. demonstrates that Crawshaw anticipated the problem of a lack of eligible nursing students. He wished to benefit other students, indicating his general charitable intent to benefit higher education. In addition, the clause utilizes "may," which is precatory.

Clause C.4. leaves the administration of the fund entirely to the trustee. Marymount reasons that the C.4. language is evidence of Crawshaw's intent to give the trustee maximum flexibility to change the way the fund is administered. C.4. also permits the trustee to carry out the objectives of the trust in spite of changing circumstances.

Clause C.1. states: "That such trust fund, with its accretions, shall *perpetually* be called and known as the 'Mary Anna and

Chester D. Crawshaw Trust Fund.' " Gregory asserts that Crawshaw would not have wanted this *perpetual* fund to cease to exist merely because Marymount terminated its educational programs.

Gregory also points out the disparity of the bequests to the Salvation Army (15%) and to the trust fund (85%). Gregory contends that Crawshaw's interest in higher education was superior to his interest in the charitable nature of the Salvation Army.

Finally, Marymount asserts that few charitable trusts are devoid of any designation as to where the funds should be spent. It argues that if the Salvation Army's view, specific charitable intent by virtue of the mention of the specific college where the scholarship fund is to be spent, is accepted, the cy pres doctrine will be effectively abolished.

## The Cy Pres Doctrine

Cy pres is a common-law doctrine that has been recognized by Kansas courts, but never applied because this court and the Court of Appeals have always found specific charitable intent. *Trustees of Endowment Fund of Hoffman Memorial Hosp. Ass'n. v. Kring,* 225 Kan. 499; *Shannep v. Strong,* 160 Kan. 206, 160 P.2d 683 (1945); and *In re Estate of Coleman,* 2 Kan. App. 2d 567, 584 P.2d 1255, *rev. denied* 225 Kan. 844 (1978).

The Court of Appeals, in *Coleman,* succinctly described the cy pres doctrine.

"The doctrine of cy-pres permits a court to implement a testator's intent and save a gift to charity by substituting beneficiaries when the named charitable beneficiary is unable to take the gift. In order for the doctrine to apply, several conditions must be met. First, the gift must be to a charitable organization for a charitable purpose. Second, it must be impossible, impractical or illegal to carry out the donor's stated charitable purpose. Finally, it must appear that the donor had a general charitable intent. The fundamental concept of the doctrine is that a donor may have a general charitable intent, and that the particular charitable institution he has designated as recipient of the gift is only an agent for effectuating that gift. Therefore, when it becomes impossible for the gift to take effect exactly as the donor specified, the court must look for another agent, as nearly like the designated one as possible, that will receive the gift and effectuate the general charitable intent expressed in the will or gift instrument." 2 Kan. App. 2d at 574.

The cy pres doctrine should not be applied if the testator has: (1) manifested a specific charitable intent; (2) has anticipated pos-

sible failure of the trust; or (3) has made an alternate disposition of the property if the charitable gift should fail. *Kring,* 225 Kan. at 504.

In 1988, the Kansas legislature enacted K.S.A. 1990 Supp. 59-22a01, which provides in part:

"(a) If a trust for charity is or becomes . . . impossible or impracticable of fulfillment or if a devise or bequest for charity, at the time it was intended to become effective is . . . impossible or impracticable of fulfillment, and if the settlor or testator, manifested a general intention to devote the property to charity, any judge, on application of any . . . interested party . . . may order an administration of the trust, devise or bequest as nearly as possible to fulfill the manifested general charitable intention of the settlor or testator. In every such proceeding, the ,attorney general, as representative of the public interest, shall be notified and given an opportunity to be heard. The provisions of this act shall not be applicable if the settlor or testator has provided, either directly or indirectly, for an alternative plan in the event the charitable trust, devise or bequest is or becomes illegal or impossible or impracticable of fulfillment."

K.S.A. 1990 Supp. 59-22a01(c)(1) states: " 'Charity' and 'charitable' includes, but is not limited to, any eleemosynary, religious, benevolent, educational, scientific, artistic or literary purpose."

K.S.A. 1990 Supp 59-22a01 codifies the common-law doctrine of cy pres. Marymount asserts that the legislature intended to broaden the application of the doctrine.

The fundamental rule of statutory construction is that the intent of the legislature governs. In considering legislative intent, this court is not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the constructions suggested. *Cyr v. Cyr,* 249 Kan. 94, 98, 815 P.2d 97 (1991).

The legislative history of K.S.A. 1990 Supp. 59-22a01 contains no information supporting Marymount's broader application contention. Minutes of Kansas Senate Committee on the Judiciary, March 1, 1988, S.B. 565. Minutes of the Kansas House Committee on the Judiciary, March 21, 1988, S.B. 565. Neither the legislative history nor the language of the statute provide additional guidance for determining either general or specific charitable intent.

In the absence of Crawshaw providing a specific guidance provision, our task of determining whether he had a general charitable intent could be advanced if we were able to answer two questions: First, if Crawshaw had known that Marymount College would not be in existence at the time his will was admitted to probate, would he have wanted the trust funds to go for loans to nursing and other students generally; or second, would he have wanted the funds of his entire residuary estate to go to the Salvation Army? These two inquiries arise from a counter-factual proposition. It is difficult to determine what Crawshaw would have wanted by assuming that certain events that did not occur had occurred.

A court will seldom have sufficient information about the pref-. erences of a testator to determine how the testator's thought process in a counter-factual situation should guide the court; consequently, we must look for guidance to our past cy pres decisions.

In *Shannep v. Strong*, 160 Kan. 206, the testator devised two quarter sections of land to a trustee to manage and pay the income to " 'the United Brethren in Christ Church Association at Burns, Marion Couney [county], Kansas,' " a local church. 160 Kan. at 207. After the church ceased to exist, the testator's widow, as the residuary legatee, filed an action to have the trust declared as lapsed and to have the land pass to her under the residuary clause. The board of trustees of the parent church intervened and claimed to be entitled to the income from the trust as the successor of the local church. We stated that the primary consideration in construction of a will is the testator's intention which must be ascertained from all provisions within the four corners of the will and not from any single or isolated provision. 160 Kan. at 211. The question in *Shannep* was whether the testator intended to create a trust for religion generally or a trust for the benefit of a particular church in a particular community. We found that the testator intended to benefit the particular local church, not religion generally, and declined to apply the cy pres doctrine.

Three decades after *Shannep*, the Court of Appeals considered the cy pres doctrine in *Coleman*, 2 Kan. App. 2d 567. *Coleman* construed a residuary clause in the will of the testator leaving the residue: (1) two-fifths to the American Cancer Society, (2)

two-fifths "to the College of Emporia, a Presbyterian educational institution located at Emporia, Kansas," and (3) one-fifth to the Presbyterian Manor, a Presbyterian home for the aged. 2 Kan. App. 2d at 569.

The College of Emporia closed its doors on December 31, 1973. The testator died on August 3, 1975. The will was executed in 1965. Sterling College, a Presbyterian College similar to the College of Emporia, urged the trial court to apply the cy pres doctrine and substitute Sterling College as beneficiary. The Court of Appeals stated the question was whether the testator had a general charitable intention to benefit Presbyterian higher education or a narrow, special intention to benefit the College of Emporia, and no other Presbyterian college. 2 Kan. App. 2d at 575. Sterling College asserted that the modern tendency is to presume a general charitable intent in any charitable gift that may be negated by either the gift instrument or extrinsic evidence. The Court of Appeals declined to create such a presumption, reasoning that the presumption favoring charitable gifts, the presumption against intestacy, and the duty of the court to uphold the intent of the testator adequately protect charitable gifts. *Coleman* held that the entity seeking the application of the cy pres doctrine has the burden to demonstrate, either by extrinsic evidence or by evidence within the will itself, that the donor had the requisite general charitable intent. 2 Kan. App. 2d at 577.

The *Coleman* court found one "crucial" fact supporting the trial court's finding that there was no general charitable intent. 2 Kan. App. 2d at 577. The testator executed his will shortly after being made aware of the College of Emporia's financial plight which bolstered the theory that he named the College of Emporia as a residuary legatee with the specific thought of aiding that particular Presbyterian college. Although there was no evidence of a special personal relationship between the testator and the college (he was not an alumnus or a trustee), there was a special personal relationship between the testator and other named beneficiaries. The Court of Appeals found these facts supported the theory that the testator wished to benefit the College of Emporia rather than Presbyterian higher education.

Syllabus ¶ 5 in *Coleman*, 2 Kan. App. 2d 567, is instructive:

"In determining whether the testator had a general charitable intent, courts may consider all available, admissible evidence, both intrinsic and extrinsic, which is indicative of the testator's intent. Among the factors which may be considered are the existence of a reversionary or gift-over provision, the existence of a limitation or reservation on the use of the gift, whether the bulk of the estate was bequeathed to charity, and whether specific devises and bequests were made to individuals who would have taken the estate by intestacy."

*Trustees of Endowment Fund of Hoffman Memorial Hosp. Ass'n v. Kring,* 225 Kan. 499, represents our latest discussion on the cy pres doctrine. The testator, George M. Hoffman, bequeathed $60,000 in trust directing that the income from the trust be paid " 'to the Board of Directors and Trustees of The George M. Hoffman Memorial Hospital of Little River, Kansas, to be used by them for the benefit of and the maintenance of said The George M. Hoffman Memorial Hospital.' " 225 Kan. at 500. The provision setting up the testamentary trust provided that if the hospital should fail to operate as a hospital for any reason whatever for one year, the entire fund should go to George Green, a friend of Hoffman's, or to Green's heirs.

Hoffman had built the hospital in 1916. He died in 1931. In 1972, the building could no longer be used as a hospital. In 1975, the trustees of the trust filed the action to determine ownership of the trust assets. Hospital District No. 2, the successor to the assets of the Hoffman Memorial Hospital Association, operated a nursing home in Little River. District No. 2 sought the application of the doctrine of cy pres. With regard to construction of the trust, we stated: "With respect to testamentary trusts the general charitable intent must first be found within the instrument itself. Only if that does not resolve the question do we resort to extrinsic circumstances surrounding the actions taken by testator." 225 Kan. at 504. We reasoned the instrument showed that Hoffman had a particular charitable intent. The trust was to benefit a specific charity which bore Hoffman's name. In addition, the presence of the gift over negated the existence of general charitable intent; thus, it was unnecessary to examine extrinsic evidence.

In the case at bar, the Court of Appeals found the facts "remarkably similar" to those in *Coleman* with the exception of the

personal relationship. 15 Kan. App. 2d at 282. The court focused on the *Coleman* testator's knowledge of the College of Emporia's financial trouble. This knowledge was *crucial* in finding specific charitable intent in *Coleman*. This crucial finding is missing in Crawshaw's relationship with Marymount.

We view *Coleman* as a well-written comprehensive opinion setting forth the factors to be considered in determining general charitable intent. Those factors are supported by case law from other jurisdictions. See *Howard Savings Inst. v. Peep*, 34 N.J. 494, 170 A.2d 39 (1961); *Board of Trustees of UNC-CH v. Heirs of Prince*, 311 N.C. 644, 319 S.E.2d 239 (1984) (applying the statute which K.S.A. 1990 Supp. 59-22a01 apparently was modeled after); and Bogert, Trusts and Trustees § 437, 137-43 (1991).

We agree with the analysis of the Court of Appeals in the case at bar. First, charitable trusts are favorites in the law and should receive a liberal construction. *In re Estate of Freshour*, 185 Kan. 434, 441, 345 P.2d 689 (1959); *In re Estate of Porter*, 164 Kan. 92, 100, 187 P.2d 520 (1947). Second, we should consider the entire will and extrinsic evidence regarding Crawshaw's relationship with Marymount rather than considering only the individual clauses as urged by the Salvation Army. *Shannep*, 160 Kan. at 211; *Coleman*, 2 Kan. App. 2d at 577.

We reason that Crawshaw had general charitable intent. We base our conclusion on the following facts:

1. The will contained no gift over provision;
2. The will contained provisions indicating Crawshaw did not wish the will to fail;
3. The trust was to be perpetual and was named after Crawshaw and his wife;
4. Crawshaw made small specific bequests to his heirs and did not include them in the residuary clause;
5. The bulk of his estate was given to charity;
6. The bulk of the residuum, 85%, was given to Marymount as a perpetual trust named after Crawshaw versus 15% outright to the Salvation Army. This indicates Crawshaw placed importance on his name living on with the scholarship loan fund;
7. Crawshaw had no known personal relationship with Marymount, supporting the theory that Marymount was an agent

to effect his general charitable intent of furthering higher education.

### The Marymount Memorial Education Trust Fund

At the hearing before the district court, Marymount argued that it would fulfill Crawshaw's intention and administer the fund as set out in his will, the exception being that the students benefiting would not be those attending Marymount College.

The trial court named MMETF as the successor trustee and then stated: "I assume, however, that you'll receive lots of applicants from Fort Hays and elsewhere to handle the nursing scholarships. Therefore, you will—unless you run out of applications for nursing students, you'll be limited to that loan."

A review of the quoted language of the trial judge appears to reflect that he intended to restrict MMETF in the administration of the trust to the purposes set forth in Crawshaw's will. The district court's order, which was approved by all parties, contains no such restriction.

The district court's order requires that the bequest be transferred to the trustee of the MMETF and administered under terms of that fund.

The trustee of MMETF is George K. Fitzsimons, Bishop of the Roman Catholic Diocese of Salina in Kansas.

The MMETF trust agreement provides, in part:

### ARTICLE I

"This trust shall be known as the 'Marymount Memorial Educational Trust Fund'. A primary objective and purpose of this charitable trust is to perpetuate the name of Marymount College as an institution of higher learning dedicated to the excellence of academic education and professional training in the field of nursing. For this reason the trustee is requested to administer the trust estate exclusively for educational purposes and in a manner that will further those educational objectives associated with Marymount College during the years of its existence. The trustee is further *requested* to carry out to the maximum extent practicable the expressed intent of any original settlor or testator of existing scholarship funds which may be added to and become a part of the trust estate. *These requests,* however, *are precatory only* and *shall not impose any legal obligation on the trustee or limit the trustee from exercising any discretionary right or power otherwise conferred by the provisions of this trust agreement."* (Emphasis added.)

Other provisions in the agreement allow the trustee to make distributions of income or principal to any charitable organization or for any charitable purpose. The Crawshaw testamentary trust could be used for charitable purposes unrelated to Crawshaw's general charitable intent to benefit students, particularly nursing students. Counsel for the MMETF acknowledged this fact during oral argument.

K.S.A. 1990 Supp. 59-22a01(a) provides that any judge "may order an administration of the trust, devise or bequest *as nearly as possible to fulfill the manifested general charitable intention of the settlor or testator.*" (Emphasis added.)

We restrict the administration of the Crawshaw testamentary trust within the MMETF trust to comply with Crawshaw's intent as expressed in his will.

The MMETF trustee, in administering Crawshaw funds, shall be controlled by the terms of the Crawshaw testamentary trust. Our affirmance of Bishop Fitzsimons, or his successor in trust, as the cy pres trustee of the "Mary Anna and Chester D. Crawshaw Trust Fund" is contingent upon his written acceptance of the limitation upon his use of Crawshaw trust funds established in this opinion. The trustee's written acceptance shall be filed with the district court not later than 20 days after the date of the mandate in this case. In the event such trustee does not file the written acceptance, the district court shall name another trustee to administer the Crawshaw trust in accordance with the terms of that trust and this opinion.

If during administration, the stated conditions of the Crawshaw trust prove to be impracticable, the trustee may petition the district court for instructions to, as nearly as possible, effect the intention of the testator.

The judgments of the district court and Court of Appeals are affirmed as modified.

HOLMES, C.J., concurring in the result.