No. 36,341

CAROLINE E. SHANNEP, *Appellee*, v. E. M. STRONG, *Defendant*, THE BOARD OF TRUSTEES OF THE KANSAS CONFERENCE OF THE CHURCH OF THE UNITED BRETHREN IN CHRIST, *Appellant*.

(160 P. 2d 683)

Opinion filed July 7, 1945.

*Braden C. Johnston*, of Marion, argued the cause, and *David W. Wheeler, Jr.*, of Marion, and *Harold N. Jordan*, of Beloit, were on the briefs for the appellant.

*W. H. Carpenter*, of Marion, argued the cause, and *W. R. Carpenter*, of Marion, was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a former wife of a testator to obtain a construction of his will. Judgment was for plaintiff and only one defendant, an intervenor, appeals.

The action was instituted in the district court of Marion county against E. M. Strong, a testamentary trustee, to obtain an accounting of his trusteeship pertaining to the rents and profits of a particular tract of land involved in this action; to have the trust declared

lapsed and for a decree declaring title to the land involved to have passed to plaintiff under the residuary clause of the will.

The Board of Trustees of the Kansas Conference of the Church of the United Brethren in Christ, referred to by the parties as the mother or parent church, was permitted to intervene and set up its claimed rights under the will. In its answer it set forth, among other things, various provisions of its constitution and discipline which are conceded to be correctly stated. They will be considered later.

Paragraph eight of the will is primarily involved and reads:

"Eighth. I give and devise the following described real estate situated in Butler County, Kansas, towit:

[Description of two quarter sections of land in Butler county.]

to E. M. Strong of Burns, Marion County, Kansas, in trust, to manage, control, sell, invest the proceeds thereof and reinvest the same and to pay the income from said property and from the proceeds thereof, as it accrues, to The United Brethren in Christ Church Association at Burns, Marion Couney [county], Kansas, and I hereby expressly authorize and empower said trustee and his successors in trust to sell and convey said real estate or any real estate that may be acquired by said trustee or his successors in trust in the execution of this provision of my will. It is my will and I hereby direct that said trustee and his successors in trust shall report to and be under the supervision of the District Court of Marion County, Kansas."

The residuary clause also relied upon by appellee reads:

"Ninth. I give and devise to my wife Caroline E. Smith, all the rest, residue and remainder of my estate not otherwise herein provided for."

The action was tried on the following agreed statement of facts:

"An agreed statement of facts upon which the issues that are joined by and between plaintiff herein and defendant, the Board of Trustees of the Kansas Conference of the Church of the United Brethren in Christ, is to be submitted to the above named Court.

"Plaintiff was married to one Isaac N. Smith more than 50 years before the commencement of this action, and continued to live and abide with him as his wife in the City of Burns, Marion County, Kansas, until the death of said Isaac N. Smith, on April 27, 1927, in the City of Burns, Marion County, Kansas.

"At the time of plaintiff's marriage to said Isaac N. Smith, said Isaac N. Smith possessed little or no property, and the property of which he died seized was accumulated by the joint efforts of said plaintiff and said Isaac N. Smith.

"Said Isaac N. Smith, on March 20, 1926, did make, execute and publish his Last Will and Testament in said City of Burns, Marion County, Kansas, a true and exact copy of which is attached to plaintiff's petition filed herein.

"For more than 30 years before March 20, 1926, Isaac N. Smith was and had been a resident of Burns, a city of the Third Class, located in the southern part of Marion County, Kansas, formerly known as the City of Saint Francis.

"Isaac N. Smith died at Burns, Kansas, on April 27, 1927. Thereafter, the Will of said Isaac N. Smith was legally probated by the Probate Court of Marion County, Kansas, on May 20, 1927, at which time plaintiff was present and accepted under the terms of said Will, and acted as Executrix of the same in said Probate Court of Marion County, Kansas. Said estate of Isaac N. Smith was finally settled in the Probate Court of Marion County, Kansas, on July 24, 1928.

"At the time of making said Will by said Isaac N. Smith, as aforesaid, and at the time of the death of said Isaac N. Smith, as aforesaid, he was seized of the following described property:

[Description of two quarter sections of land in Butler county.]

"After the death of said Isaac N. Smith, and the probation of his Will, plaintiff continued to live and reside at Burns, Kansas, and was married to Joseph Shannep, and is now residing at Burns, Marion County, Kansas.

"On March 7, 1892, there was organized at Burns, Marion County, Kansas, a religious society known as the United Brethren in Christ Church Association at Burns, in Marion County, Kansas. There was issued to said religious organization, a charter by the State of Kansas, stating that the number of the Trustees shall be five and the names and residences of those who are appointed for the first year are: Simon Crites, L. Horr, Leonard Pfouts, H. C. Starbuck, F. A. Baxter, all of whom resided at Burns, Kansas, and their successors in office shall be elected by the Quarterly Conference having jurisdiction over said property, according to the discipline of the said United Brethren in Christ Church.

"All of said above named Trustees have died.

"Said United Brethren in Christ Church Association at Burns, Kansas, after its organization and at the time of making the Will of said Isaac N. Smith and probation of the same as herein stated, was functioning as a religious association at Burns, Kansas. While so functioning and before making said Will by said Isaac N. Smith and the probation of the same, said United Brethren in Christ Church Association at Burns, Kansas, erected a church in the City of Burns, Kansas, and acquired a parsonage.

"At such time, said United Brethren in Christ Church Association at Burns, Kansas, functioned as a religious organization, holding services in said church building and other services and meetings in accordance with the teachings, doctrines and the faith of the United Brethren in Christ Church.

"The United Brethren in Christ Church Association at Burns, Kansas, was affiliated with the Kansas Conference of the United Brethren in Christ Church.

"For more than three years before the commencement of this action, said United Brethren in Christ Church Association at Burns, Kansas, disbanded and ceased to function at Burns, Kansas, or any other place, and there were no Trustees of said association existing at said last mentioned time or any other officers who had or pretended to have charge of said association.

"Said association during said last mentioned period and some time prior thereto, ceased to hold any meetings or services of any kind in its church at Burns, Kansas, or in the City of Burns, Kansas.

"Said church building and parsonage so located in the City of Burns, Kansas, so constructed and acquired by said association as aforesaid, were aban-

doned and said association entirely ceased to function and became disbanded and had no existence during the time last herein .mentioned.

"After said United Brethren in Christ Church Association at Burns, Kansas, had abandoned said church and buildings as aforesaid, and ceased to function as a religious organization, the Kansas Annual Conference of the Church of the United Brethren in Christ, at its session in Wichita, Kansas, on Wednesday, August 25, 1943, under its Constitution, Rules and Discipline set forth in its answer filed herein, recognized that said United Brethren in Christ Church Association at Burns, Kansas, had abandoned said church and parsonage at Burns, Kansas, disbanded and ceased to function as such association, by passing a resolution so recognizing that said United Brethren in Christ Church Association at Burns, Kansas, had disbanded and ceased to exist, which resolution reads as follows:

" 'RESOLUTION OF BURNS CHURCH AND BURNS CHURCH PROPERTY.

" 'Whereas: the Burns Church of the Burns-Summit Charge is in a disorganized state and

" 'Whereas: the Summit Church, Burns-Summit Charge is disorganized and

" 'Whereas: some years ago a bequest was made to the United Brethren in Christ Association at Burns, Marion County, Kansas, by I. N. Smith and

" 'Whereas: the Board of Trustees of Kansas Annual Conference would like to safe-guard this bequest and have the future status of this bequest determined by the Court.

" 'We recommend that the Burns Church be recognized as disbanded, and the property abandoned and as per Discipline 1941, Chap. 5, Sec. 1, Art. 5, and that the Board of Trustees be authorized to rent, lease, sell or otherwise dispose of the parsonage property at Burns, located on Lot 4, Francis Addition, City of Burns, Marion County, Kansas, and the Church property and contents located on Lot 77, 250 Washington St., City of Burns, Marion County, Kansas, and that the Board of Trustees of Kansas Annual Conference be authorized to petition the District Court of Marion County, Kansas, to determine the disposition of the I. N. Smith bequest in case the Burns United Brethren Church Association be formally disbanded. Further, that said Court be petitioned by said Board that these Funds as they accrue be paid either to the Board of Trustees, of Kansas Annual Conference or the Summit Church, Burns-Summit Charge, Kansas Conference of the Church of the United Brethren in Christ.

" 'C. V. Priddle, Secretary
of the Board of Trustees.'

"About three years prior to the passage of said resolution and after said United Brethren in Christ Church Association at Burns, Kansas, had disbanded and ceased to function, said defendant Board of Trustees of the Kansas Conference of the United Brethren in Christ took possession of said church and said parsonage so erected and constructed by the United Brethren in Christ Church Association at Burns, Kansas, rented and leased said buildings and property, and appropriated the money for the rent thereof.

"After the passage of said resolution and before the commencement of this action, said defendant Board of Trustees of the Kansas Conference of the United Brethren in Christ sold and conveyed said church building to an organization known as the Mennonite Church and said Board of Trustees of the

Kansas Conference of the United Brethren in Christ sold and conveyed said parsonage to a man by the name of Hart, and appropriated the proceeds of the sale of said buildings.

"Said defendant Board of Trustees of the Kansas Conference of the United Brethren in Christ is an ecclesiastical body which was originally formed by the union of many churches about the year 1800 A. D., and since then said organization has conducted its affairs under a constitution and certain rules and Church law promulgated in the form of a Discipline. All of the quotations set forth in the answer of defendant Board of Trustees of the Kansas Conference of the United Brethren in Christ are correctly quoted from the Discipline of said organization.

"Immediately after the Will of said Isaac N. Smith was made and probated as hereinbefore set forth, the defendant herein, E. M. Strong, who is and was a resident of Marion County, Kansas, took possession of the half section of land hereinbefore described, under and by virtue of the trust sought to be created by said Will of said Isaac N. Smith, and is now and has been in possession of said premises.

"Pursuant to the authority so granted by its Constitution, the General Conference of this answering defendant, did in and about the year 1853, create the Kansas Conference of such church, and thereafter, this defendant was incorporated under the Laws of the State of Kansas, and this answering defendant so organized has since said time and is now carrying out the various duties under said Constitution and Discipline and under the supervision of the General Conference aforesaid.

"Said defendant E. M. Strong has rented said premises, collected the rent, paid the taxes thereon, and from time to time before said United Brethren in Christ Church Association at Burns, Kansas, became defunct and ceased to exist, paid such rent after deducting the taxes and upkeep therefrom, to said United Brethren in Christ Association at Burns, Kansas.

"Defendant E. M. Strong, as Trustee, from time to time rendered an account in writing to the District Court of Marion County, Kansas, of the renting of said premises and the disposition of the rent paid to him.

"Defendant E. M. Strong. has never received any pay for managing said premises, renting and collecting the rent therefor, and he now has on hand approximately $700.00 collected by him for the rent of said half section of land, which land he is now in possession of.

"At the time said United Brethren in Christ Church Association at Burns, Kansas, disbanded, as aforesaid, there were but two members of said organization surviving."

The district court allowed compensation to the trustee for services performed and discharged him from all further responsibility and duty in connection with the trust. The court further decreed that under the residuary clause of the will the property described in paragraph eight reverted to and vested in Caroline E. Shannep, the former wife of the testator. From that construction of the will the defendant intervenor appeals.

Before discussing the appeal on its merits we are confronted with appellee's motion to dismiss the appeal for the reason appellant failed to include a specification of errors in his abstract as required by rule 5 of this court. The rule is an important one and should be observed. Wholly inexcusable failure to comply with it has at times caused inconvenience, confusion and disadvantage. It has at times left opposing counsel and this court unadvised as to the specific grounds on which a reversal is sought. That, however, is in nowise true here. This case was tried on an agreed statement of facts and the only question presented is one of law, namely, whether the trial court erred in the construction of the will. Appellant's abstract and brief were filed under one cover. The single issue involved was clearly disclosed therein. Appellee's brief deals solely and alone with answers involving that issue. Counsel for appellee conceded on oral argument before this court they were in nowise misled or inconvenienced in the preparation of their brief or in making their oral argument. The inadvertent omission from the abstract was promptly supplied when called to appellant's attention. The motion to dismiss the appeal is denied.

Do the will and the stipulated facts require a reversal of the judgment? It is elementary that the primary, the supreme, test in the construction of a will is the intention of the testator. It also is elementary that such intention must be ascertained not from any single or isolated provision but from all provisions contained within the four corners of the instrument and from circumstances surrounding its execution if they are needed to clarify the testator's true purpose and intent. In other words, courts are required to effectuate not their own desires or notions of what the testator wisely should have done but to give full force and effect to the testator's actual intent in the disposition of his own property. If that intent reasonably can be ascertained it will be declared and executed unless it be contrary to law or public policy. With these principles in mind we may proceed with the construction of the will. We shall refer to the beneficiary under the trust as the local church, to the intervening parent church organization as appellant and to the former wife of the testator, named in the residuary clause, as appellee.

The local church disbanded. It ceased to exist. The income or proceeds from the corpus of the trust estate, a half section of land in Butler county, therefore could be used by it no longer. In other

words the express trust lapsed. The question now is what disposition shall be made of the trust? What light does the will itself and the stipulated facts throw upon that inquiry?

The will nowhere mentions the appellant. There is nothing in the stipulated facts to indicate the testator was a member of the local church or of any church. There is nothing in the facts to indicate he was to the slightest extent conversant with the discipline or ecclesiastical law of the parent church under which the business affairs of the local church were governed and administered. In fact there is no indication he even knew there was a parent church organization such as appellant. Under such circumstances are we justified in concluding the testator actually intended appellant should receive the fruits of his bounty and use them for any purpose it believed best in connection with its program for the advancement of religion generally? If we are required to so conclude then none of the proceeds of the trust are required to be used for religious purposes in the little town of Burns by any religious organization and the entire fund may be employed elsewhere in this country or in foreign lands and on one or any number of projects entirely unknown to the testator but which appellant deems to be worthy. While some persons might strongly favor such use of the funds and believe they would be expended advisedly and for a highly deserving cause, others might entertain a wholly different view. Such a contrariety of views often obtains even among ardent church members.

But what about this testator's intent and purpose in that regard? It is clear he intended to create a charitable trust. But that fact does not conclude the vital and primary question here presented. That question is whether the testator intended to create a trust for religion generally and for all that may be done under the name of religion or whether he intended to create a trust for the benefit of a particular church in a particular community.

As the beneficiary of this trust he designated only "The United Brethren in Christ Church Association at Burns, Marion County, Kansas." The parties have a good deal to say concerning the significance or lack of significance of the words "at Burns" contained in the designation of the beneficiary. The full quotation above is the corporate name of the local church as disclosed in its charter. The testator made no provision that the trust property or the income therefrom should accrue to any other religious body or

organization located at Burns or elsewhere in the event the trust should lapse or fail for any reason. He did not name appellant or any other church or religious body in the residuary clause of his will. It also will be observed he did not make a devise of the land or a bequest of the income therefrom directly to the local church. He carefully avoided doing that. He expressly created a trust under which the legal title to the land was vested in a trustee, E. M. Strong of Burns, Kansas. He gave that trustee, and not the local church or its trustees, the supervision and control of the land. He further expressly provided that the trustee and his successors should report to and be under the supervision of the district court of Marion county, Kansas. That county was and had been the testator's residence for a period of over fifty years. The testator created an identical trust in his will for the benefit of the "Methodist Episcopal Church of Burns, Kansas." The testator had been a highly successful farmer and had accumulated much land, the great bulk of which he devised outright or for life to his wife, appellee. These are all proper considerations in the process of determining whether the testator had a general or a particular charitable intent. (2 Bogert Trusts and Trustees, § 436, pp. 1307-1312.)

Where a settlor discloses an intent to create a particular charity, that is, a charity for the benefit of a particular organization or institution rather than an intent to create a general charity the doctrine of *cy pres* is not properly applied. (10 Am. Jur., Charities, § 127; 3 Page on Wills, Lifetime ed., § 1236, p. 599; 2 Bogert Trusts and Trustees, § 436; 4 Pomeroy's Equity Jurisprudence, § 1027, p. 43; 3 Scott on Trusts, § 399.3, p. 2111.) This doctrine is well supported by numerous examined cases. It is not deemed necessary to set them out here as they will be found in the text discussions by the eminent authorities above mentioned.

This court in the rather recent case of *In re Estate of Weeks*, 154 Kan. 103, 114 P. 2d 857, had occasion to comment on the doctrine of *cy pres* and stated:

"As used in this state the doctrine seems to be no more than the application of rules long used by courts of equity in interpreting written instruments to ascertain the intention of the grantor or testator, and in carrying out such intention." (p. 107.)

Manifestly where the intention of the testator appears there is no occasion for the application of any rule in aid of construction. We think the testator's intention in the instant will is reasonably clearly

indicated. We think his dominant purpose and intent was to aid the two particular local churches in his old home town rather than to create a general charity for religious purposes. It was quite natural, and certainly appropriate, for an old farmer who had struggled and lived successfully in a small community for over half a century to contribute to the welfare of his home community and old friends by aiding these two local character-building institutions which, if like most churches, are always in need of funds. In the absence of evidence disclosing any other intent we think we would be doing violence to this testator's real purpose by construing his will as intending to create a general charity for the advancement of religion.

We frankly concede there is an apparent lack of harmony in the decisions on the question of what constitutes an intent to create a general charity or a particular charity. The tests for determining that question are not very clearly defined. The result is the question has been determined upon the basis of each particular instrument or on the basis of the instrument itself and surrounding circumstances. As previously indicated, however, we have no serious difficulty with that question here in view of the will itself and the stipulated facts.

It follows that, in the absence of a residuary clause, the property in question would stand, and should be disposed of, as intestate property. (*Morse v. Henlon,* 97 Kan. 399, 402, 155 Pac. 800; 2 Bogert Trusts and Trustees, § 418, pp. 1276-1277, § 468, pp. 1443-1445.) But here we have a residuary clause and title to the lapsed trust property passes thereunder to the residuary devisee in the same manner as if the trust were void. (*Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 333, 211 Pac. 146; *Gibbs v. Turner,* 140 Kan. 53, 34 P. 2d 564.) We need not cite the numerous decisions from other jurisdictions which are in harmony with these views.

In the early case of *Morse v. Henlon,* supra, it was said:

"The primary consideration in the interpretation of a will is the intention of the testator, and if it can be ascertained, that intention must govern if it is not contrary to a settled rule of positive law or in violation of public policy." (p. 401.)

This rule has been followed consistently in subsequent decisions of this court as indicated in *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177. We know of no reason for saying the construction we have given this instrument is contrary to any settled rule of positive law

or in violation of public policy. On the contrary we think it is in conformity with both.

Appellant contends that under the provisions of G. S. 1943 Supp. 17-1716d it is entitled to the income from the property in question. That statute pertains to appellant's right to "abandoned property" of the local church. The local church never had title to or the possession of the land, the corpus of the trust, and hence it cannot well be said to have abandoned the land. It is at least doubtful whether the statute was intended to apply to the instant case. Appellant cites no authorities from other states with similar statutes to support its contention and our limited time for research has disclosed none. In any event the will in the instant case was executed in 1926, probated in 1927, and the statute relied upon was not passed until 1939. It frequently is said that a person is presumed to know the law and that contracts are made in contemplation of existing law which becomes a part of the contract. But, assuming for the moment the statute is applicable, can we say the testator's intent in making a will must be determined by the provisions of a law not enacted until thirteen years after the execution of his will? But that is only part of the inquiry. Can we say that statute rendered or was intended to render nugatory the residuary clause of the will? We do not think so.

Appellant concedes the case of *United Brethren, etc., v. Mount Carmel Community Cemetery Ass'n*, 152 Kan. 243, 103 P. 2d 877, was not governed by the provisions of G. S. 1943 Supp. 17-1716d, but it cites that case as containing an indication that the statute, had it been applicable, might not have been held invalid as retroactive legislation with respect to property abandoned by a local church previous to the enactment of the statute. That was not a will case and, of course, it in nowise purports to declare the statute should be considered in ascertaining testamentary intent where a will is executed before the statute was enacted. That case dealt with a conveyance of abandoned real estate by trustees of a local church after the church had ceased to function. The issue there was solely whether the trustees of the local church or the parent church, under the church law, had dominion and control over abandoned property of the local church. In other words the issue was purely one to determine powers of government under the ecclesiastical law of that denomination. That issue, very properly, was decided in favor of the parent organization. It was the same identical organization as

appellant in the instant case. We pause to observe that the important provisions of the church law on the subject of abandoned property set forth by appellant in the instant case may be found in the opinion of that case. The decision in that case does not purport to be, and it is not, controlling in a will case on the question of a testator's intent.

We have carefully examined every case in the able brief filed by counsel for appellant. A detailed analysis thereof would not add materially to the opinion. We are persuaded the decision of the trial court was correct.

The judgment is affirmed.