(193 P.3d 490)
No. 99,142

IN RE: THE TESTAMENTARY TRUST CREATED UNDER THE LAST WILL AND TESTAMENT OF ROSEBUD E. KEYS, DECEASED, UMB BANK, N.A., AS TRUSTEE OF THE TESTAMENTARY TRUST CREATED UNDER THE LAST WILL AND TESTAMENT OF ROSEBUD E. KEYS, DECEASED, *Appellee*, v. KANSAS EAST CONFERENCE OF THE UNITED METHODIST CHURCH, INC., *Appellant*, and UNITED METHODIST YOUTHVILLE, INC., WYANDOTTE HEALTH FOUNDATION, INC., THE AMERICAN HEART ASSOCIATION, INC., and AMERICAN CANCER SOCIETY, HIGH PLAINS DIVISION, INC., *Appellees*.

504

Opinion filed October 3, 2008.

*Patricia A. Reeder* and *Bruce J. Woner*, of Woner, Glenn, Reeder, Girard & Riordan, P.A., of Topeka, for appellant Kansas East Conference of the United Methodist Church, Inc.

*Reid F. Holbrook, Frankie J. Forbes,* and *Michael T. Jilka,* of Holbrook & Osborn, P.A., of Overland Park, for appellee Wyandotte Health Foundation, Inc.

Before MALONE, P.J., BUSER, J., and LARSON, S.J.

BUSER, J.: The Kansas East Conference of the United Methodist Church, Inc. (Conference), appeals the district court's ruling that it is not entitled to the remainder interest of the dissolved Central Avenue United Methodist Church of Kansas City, Kansas (Church), under the terms of a testamentary trust (Trust) established as a result of the philanthropy of Rosebud E. Keys, deceased.

We hold that because the Church was a remainder beneficiary of the Trust and the Church was in existence when the Trust ter-

minated (although not at the time the Trust's proceeds were being distributed), the remainder interest vested in the Church. Moreover, because the Conference as a parent entity took the Church's assets upon its dissolution, we find the Conference also took the Church's remainder interest in the Trust proceeds. Accordingly, we reverse the district court's order that the Conference may not be paid the Church's remainder interest from the Trust and remand for further proceedings.

## Factual and Procedural Background

The record on appeal is primarily comprised of facts set forth in a petition for consent decree to distribute the Trust property filed by UMB Bank, N.A. (Bank), in its capacity as trustee. The Bank attached numerous documents to the petition. There were no dispositive motions filed or hearings below.

Rosebud's last will and testament (Will) was executed on February 24, 1983. She directed that, after payment of expenses and specific bequests, the "rest, residue and remainder of my property, whether real, personal, or mixed" would fund a Trust for the benefit of her niece, Eleanor Rosebud Rebeck.

The Will set out the following provisions concerning the termination of the Trust and distribution of any remainder:

"This Trust shall terminate upon the expenditure of all of the Trust principal and the increment and interest therefrom, or the death of said ELEANOR ROSE REBECK. Upon her death, any principal increment or undistributed income remaining from the funds held in this Trust for her shall be paid in equal shares to WALTER REBECK, if he is living at the death of said ELEANOR ROSE REBECK, the [Church], the YOUTHVILLE METHODIST HOME FOR BOYS of Newton, Kansas, the BETHANY MEDICAL CENTER of Kansas City, Kansas for the education and training of nurses, the KAW VALLEY HEART ASSOCIATION of Kansas City, Kansas for research, and the WYANDOTTE COUNTY CANCER SOCIETY of Kansas City, Kansas for research. In the event none of the above organizations are in existence upon the termination of this Trust, the Trustee, in its sole discretion, shall pay said principal, increment or undistributed income to similar charitable organizations."

The date of Rosebud's death is unknown, but her Will was probated in 1991. Walter Rebeck predeceased Eleanor. Eleanor died on July 29, 2004. The record does not show whether the remainder

beneficiaries were notified of Eleanor's death or their status under the Trust. On December 8, 2006, almost 2½ years after Eleanor's death, the Bank filed its petition to distribute the Trust's assets which consisted of about $774,000 in cash and equities.

In 2005, after Eleanor's death—but before the Bank began distributing the Trust assets—the Church was dissolved. The dissolution was approved by Church members, with final action taken by the Conference. The Church's assets, including the building, were distributed to the Conference in accordance with the policies of the United Methodist Church.

In its petition, the Bank alleged "there is currently neither an organization operating under the name of [Church] nor was [Church] merged into another organization that is currently operating a United Methodist Church as the legal successor to the [Church.]" The Bank concluded: "It is unclear whether the share of the . . . Trust intended for [the Church] should be paid to the . . . Conference, or whether that bequest should lapse and be redistributed proportionally" among the remainder beneficiaries other than Conference. The other remainder beneficiaries are either the same entities as those identified in the Will or their successors.

In spite of its uncertainty regarding the Conference, the Bank prayed that all of the remainder beneficiaries would "share in the remaining assets . . . [of the Trust] in equal shares." Simultaneously with the Bank's petition, all of the remainder beneficiaries filed identical documents captioned "Entry of Appearance, Waiver of Notice and Consent to Judgment." Each remainder beneficiary waived service of process, stated it did not deny any of the allegations contained in the petition, and agreed "to the entry of an order consistent with the grant of requested relief."

On December 20, 2006, the district court notified the Bank by letter that while it could approve immediate distribution to the remainder beneficiaries other than the Conference, it could not "conclude that [the Conference] is entitled to a one-fifth (⅕) distribution, as being the same as [the Church]." According to the district court, "all would agree [the Church] no longer exists, nor was it absorbed into another Methodist Church here in Kansas

City, Kansas." The district court allowed any party 30 days to file a memorandum "as to why the . . . Conference should or should not receive said one-fifth (1/5) share."

The Conference filed a memorandum citing *Shannep v. Strong*, 160 Kan. 206, 160 P.2d 683 (1945), and arguing that "the intent of the testator is the only concern of the Court." The Conference maintained it was "the intent of Rosebud . . . that, if . . . Church was in existence at the death of Eleanor . . . , the Church would receive one-fifth of her residual estate." The Conference asserted that as of the date of Eleanor's death, July 29, 2004, the Church was clearly " 'in existence.' " With regard to the Church's subsequent dissolution, the Conference relied on the Book of Discipline of the United Methodist Church which provided:

" 'Any gift, legacy, devise, annuity, or other benefit to a pastoral charge of local church that accrues or becomes available after said charge or church has been discontinued or abandoned shall become the property of the trustees of the annual conference within whose jurisdiction the said discontinued or abandoned church was located or shall pass as directed by vote of the annual conference.' "

The Conference attached an affidavit from Russell L. Hinshaw, its treasurer, stating the Book of Discipline "is the primary source document for conducting the affairs of the United Methodist denomination, including the administration of the Conference and its local churches." Hinshaw also swore that the provision regarding discontinued or abandoned property was in effect on the date of the Will's execution and on the date of Eleanor's death. As a result, the Conference contended that it should take the Church's remainder interest in the Trust.

The only response to the Conference's memorandum was made by appellee Wyandotte Health Foundation, Inc. (Foundation), the successor in interest to Bethany Medical Center. Citing *In re Estate of Coleman*, 2 Kan. App. 2d 567, 584 P.2d 1255, *rev. denied* 225 Kan. 844 (1978), the Foundation argued a distribution to the Conference would defeat Rosebud's intent: "Rosebud . . . intended to bequeath a residual interest to the . . . Church," but "the doors were closed and the [C]hurch is no more."

On April 27, 2007, the district court issued a memorandum opinion affirming its earlier conclusion. The district court found the facts were undisputed. Relying on *Shannep* and *Coleman*, the district court focused on the date of distribution:

"As the [Church] is not in existence at the time of the final distribution it is impossible for the [Bank] to make distribution to a non-existent party.

. . . .

". . . This ruling satisfies Rosebud's . . . intent. There was no provision in her will which required the [Bank] to distribute assets on the day of [Eleanor's] death, or any time thereafter. The [Bank] chose to commence distribution by the filing of a Petition on December 8, 2006. Therefore, the request of the [Bank] to include the . . . Conference as the recipient of the [Church's] bequest must be denied as being contrary to Kansas law and prior Kansas case law, in particular, *Shannep* and *Coleman*."

The Conference appeals.

### *Did the Church's Remainder Interest Vest?*

The primary function of a court in a case turning on the interpretation of a testamentary trust "is to ascertain the testator's intent as derived from the four corners of the will and, once ascertained, the intent will be executed unless contrary to law or public policy. [Citation omitted.]" *In re Estate of Berryman*, 226 Kan. 116, 118, 595 P.2d 1120 (1979). " '[W]here from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ the rules of judicial construction and the will must be enforced in accordance with its terms and provisions.' " 226 Kan. at 119 (quoting *Johnston v. Gibson*, 184 Kan. 109, Syl. ¶ 3, 334 P.2d 348 [1959]). Both the interpretation of a testamentary trust and the question of whether its terms are ambiguous are issues of law subject to unlimited review. *Godfrey v. Chandley*, 248 Kan. 975, 977, 811 P.2d 1248 (1991).

On appeal, neither the Conference nor the Foundation contend the Will's terms are ambiguous. The parties only dispute the legal effect of those terms given the undisputed facts of this case.

The Conference correctly states that the Will made the Church a "remainder beneficiary" of the Trust. See *In re Estate of Sanders*, 261 Kan. 176, 186, 929 P.2d 153 (1996) (identifying individuals as

remainder beneficiaries of a trust); *Barnhart v. Bowers*, 143 Kan. 866, 872, 57 P.2d 60 (1936) (holding a church organization "can be the beneficiary of a charitable trust"). The Kansas Uniform Trust Code (KUTC), K.S.A. 58a-101 *et seq.*, defines "beneficiary" in part as a person that "[h]as a present or future beneficial interest in a trust, vested or contingent." K.S.A. 2007 Supp. 58a-103(2)(A).

As applied here, interest means "[a] legal share in something; all or part of a legal or equitable claim to or right in property." Black's Law Dictionary 828 (8th ed. 2004). A future interest occurs when "the privilege of possession or of other enjoyment is future and not present." Black's Law Dictionary 699 (8th ed. 2004). A contingent interest is "[a]n interest that the holder may enjoy upon the occurrence of a condition precedent." Black's Law Dictionary 828 (8th ed. 2004).

The Church, therefore, held a contingent future interest in any remainder of the Trust. It was contingent on the existence of the Trust when Eleanor died. If the principal had been exhausted before Eleanor died, the Trust would have terminated at that point, without a remainder. In short, the condition precedent would not have occurred.

In the present case, however, the condition precedent did occur. Eleanor died with a remainder in place. A vested interest is "[a]n interest the right to the enjoyment of which, either present or future, is not subject to the happening of a condition precedent." Black's Law Dictionary 829 (8th ed. 2004). Under terms of the Will, upon Eleanor's death with a remainder in place, the sole condition precedent had occurred. The filing of the Bank's petition, nearly 2½ years later, was not a further condition precedent to the vesting of the remainder beneficiaries' interests.

The Will was explicit: "This Trust shall terminate upon . . . the death of said [Eleanor]." Contrary to the district court's statement, the Trust specified that the remainder "shall" be paid "upon [Eleanor's] death." According to one authority, this is "[t]he most common situation," that a trust will "pay the income to one beneficiary for life and on his death . . . make distribution of the principal. In such a case, the trust will be terminated on the death

of the life beneficiary." 4 Scott on Trusts § 334, p. 409 (4th ed. 1989).

We also note that Rosebud gave the Bank discretion to pay the remainder to "similar charitable organizations" if none of the identified remainder beneficiaries were "in existence upon the termination of this Trust." This language further underscores that the identity of the remainder beneficiaries was to be determined upon the termination of the Trust.

This reading of the Will is not contrary to the KUTC. Although a trust may terminate in more than one way, the KUTC recognizes that a trust "terminates to the extent the trust . . . expires pursuant to its terms." K.S.A. 58a-410(a). "[O]n termination of the trust," a trustee's duty under the KUTC is to "exercise the powers appropriate to wind up the administration of the trust and distribute the property to the persons entitled to it." K.S.A. 58a-816(26). This suggests that the "persons entitled to" the trust property may be determined at termination.

Focusing on the date a trust terminates is also preferable under general legal principles. "No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." *In re Estate of Woods*, 181 Kan. 271, Syl. ¶ 9, 311 P.2d 359 (1957). Following the "the well-settled rule that the law favors the early vesting of estates," *Watts v. McKay*, 160 Kan. 377, 385, 162 P.2d 82 (1945), we will not read the Will to make the Church's remainder interest contingent even after the termination of the Trust.

In *Harvey v. Harvey*, 215 Kan. 472, 524 P.2d 1187 (1974), for example, a will devised a remainder interest to the children of individuals who had received a life tenancy. Our Supreme Court pointed out that "[o]f necessity the class [of remaindermen] would be finally determined immediately upon the death of the life tenant and therefore the remainder interest of each of the members of the class must vest not later than that time." 215 Kan. at 478-79. A similar conclusion was reached in *In re Hilgers*, 352 B.R. 298, 306 (Bankr. D. Kan. 2006), which held under Kansas law that a future remainder interest vested at the death of a trust's life beneficiary.

Had the Bank filed its petition for distribution while the Church was still in existence, there would have been no question that the Church should be paid. Under the terms of the Will and Kansas law, the interests of the remainder beneficiaries including the Church vested on Eleanor's death. We next address whether the Conference took the Church's remainder interest.

### Did the Conference Take the Church's Remainder Interest?

Given the Church held a vested remainder interest, and given the Conference took the Church's assets, the Conference took the Church's remainder interest. Even a contingent remainder interest is an alienable property right. See *Woolums v. Simonsen*, 214 Kan. 722, Syl. ¶ 6, 522 P.2d 1321 (1974). The Trust did not forbid alienation of the remainder interests, and "[i]n the absence of provisions in the trust instrument or a statute to the contrary, the beneficiary may alienate his interest as freely as he might a legal estate or interest." Bogert, Trusts & Trustees § 188, p. 456 (2d ed. rev. 1979).

The district court mistakenly concluded from the language of the Will that Rosebud had a contrary intent. While it is true that "a vested remainder may be subject to complete defeasance," *Ghromley v. Kleeden*, 155 Kan. 319, 321-22, 124 P.2d 467 (1942), nothing in the Will suggests that the interests of the remainder beneficiaries were defeasible after termination of the Trust. An interest is defeasible if it is subject to a condition subsequent, *Harvey*, 215 Kan. at 478, but a condition subsequent is not mentioned in the Will. *Cf. In re Estate of Thompson*, 161 Kan. 641, Syl. ¶ 4, 171 P.2d 294 (1946) (will devised land "to be returned to my estate in the case of death" of the devisees). Imposing a condition subsequent by judicial order would read into the Will something not found in its four corners.

Defeasance by judicial order could also result in untoward consequences as suggested by *In Re Boston Regional Medical Center, Inc.*, 410 F.3d 100 (1st Cir. 2005). In that case, a hospital was a remainder beneficiary, and when the life beneficiary died, "[t]he trustees neither initiated any contact with the named beneficiaries . . . nor made any immediate distribution of the corpus." 410

F.3d at 103. Some 11 months later, the hospital "closed its doors, halted hospital operations, and filed for bankruptcy protection." 410 F.3d at 104. Although the hospital filed under Chapter 11 and reorganized, the plan was strictly "a liquidating plan," and the sole purpose of the reorganized entity was "to liquidate the marshaled assets and distribute the net proceeds to [its] creditors in accordance with the provisions of the Plan." 410 F.3d at 104.

The question before the First Circuit Court of Appeals was whether the bequest should go to this reorganized entity for the benefit of the hospital's creditors or to churches which comprised the other remainder beneficiaries. Although the hospital continued to exist after a fashion, it is important to note that the reorganized entity could not take as a charitable institution under the applicable Massachusetts trust law. 410 F.3d at 111. The question before the First Circuit was whether the hospital's remainder interest should be paid to this reorganized entity in spite of its lack of charitable purpose.

The First Circuit began by noting that the hospital "was running . . . and was actively engaged in performing its charitable mission" when the life beneficiary died, and this meant that its remainder interest vested under Massachusetts law. 410 F.3d at 111. The other remainder beneficiaries nevertheless maintained that vesting was "irrelevant" because the hospital was "bankrupt now and no money it receives will be used for charitable purposes on a going-forward basis." 410 F.3d at 111.

The First Circuit disagreed, pointing out that focusing on the date of distribution rather than vesting "would have the potential to work serious mischief." 410 F.3d at 111. "[T]hose in charge of the distribution of funds" would have the "power, through action or inaction, to affect the identity of those who receive the funds." 410 F.3d at 111. It would also "raise the boggart of unnecessary litigation aimed at influencing the timing of distributions." 410 F.3d at 111. In light of these considerations, the First Circuit decided on "the date of vesting as the vantage point from which to determine a charitable organization's eligibility to receive a bequest." 410 F.3d at 112.

Although *In Re Boston Regional Medical Center* applied Massachusetts law and the remainder beneficiary in question had a successor, the case provides some guidance. As discussed above, under Kansas law the Church's remainder interest similarly vested at the death of the life beneficiary. And although the Conference is not the Church's successor, it is the Church's parent and much closer in character to it than was the reorganized entity to the predecessor hospital in *In Re Boston Regional Medical Center.* Most importantly, the First Circuit gave effect to the date of vesting, rather than distribution, even though no charitable purpose would be served by the bequest. This highlights the strength of the argument in the present case against focusing on the date of distribution contrary to the terms of the Will.

We next consider the two Kansas cases, *Shannep* and *Coleman*, relied on by the district court.

In *Shannep*, a former wife brought an accounting action against the trustee of a testamentary trust established by the will of her former husband. The trust benefitted a specific church, which had since dissolved. The former wife was the residuary devisee under the will.

Our Supreme Court affirmed the district court's holding that the trust property should be paid to the former wife under the residuary clause, not to the Church's denomination. *Shannep*, 160 Kan. at 210, 216. The court found "the express trust lapsed," and the only question was "what disposition shall be made of the trust?" 160 Kan. at 212. Given the former wife was the only residuary devisee under the will, the trust property went to her with "no occasion for the application of any rule in aid of construction." 160 Kan. at 213.

*Shannep* supports the payment of the vested remainder interest to the Conference. In *Shannep*, our Supreme Court simply applied the will, which gave the residuary to the former wife. In the present case, the Will provisions gave the remainder to the Church, among others.

The Foundation's contention that the Conference should not take because the denomination in *Shannep* did not take is unpersuasive. The church in *Shannep* was the life beneficiary, not the

residuary beneficiary. The trust in *Shannep* lapsed with the dissolution of the church. In this case, the Trust did not lapse but terminated by its own provisions, and the Church, which was in existence at the time, received a vested remainder interest. *Shannep* does not stand for the proposition that a parent religious organization may not take a vested remainder interest of a church (along with its other assets) if that church dissolves.

In *Coleman*, the issue was again the residuary clause of a will. There were three residuaries, and one of them, the College of Emporia, had closed more than a 1½ years before the testator's death. The college's assets and corporate charter were purchased by The Way College of Emporia, which then claimed under the residuary clause.

Our court affirmed the district court's holding that The Way College of Emporia was not a residuary. *Coleman*, 2 Kan. App. 2d at 570, 579. The testator had specified that the College of Emporia was "a Presbyterian educational institution," while The Way College of Emporia was not accredited, taught only Bible classes, and was associated with a "fundamentalist sect." 2 Kan. App. 2d at 570, 572. The two colleges were simply not "the same legal entity." 2 Kan. App. 2d at 572.

*Coleman* is inapplicable to the present case. The bequest to the College of Emporia lapsed because that college ceased to exist *before* the death of the testator. See *In re Estate of Haneberg*, 270 Kan. 365, Syl. ¶ 3, 14 P.3d 1088 (2000) (bequests lapse by death of beneficiary prior to testator's death). Here, the Church was still in existence at the time of Eleanor's death.

"Where a bequest is made to a corporation that was in existence at the time of the testator's death but that ceased to exist before the legacy was paid to it, it has been held that the bequest does not fail even though it would have failed if the corporation had ceased to exist at the testator's death." 4A Scott on Trusts § 397.3, pp. 429-30 (4th ed. 1989).

Finally, the Foundation contends that although Kansas statutes recognize "the right of certain denominations to claim an interest in the property . . . of a local church," the legislature has made no such provision for the United Methodist Church. The Foundation's argument assumes that the ownership and transfer of

church property depends on particular legislation. To the contrary, churches may become "bodies corporate" with "the same power to make bylaws for the regulation of their affairs as other corporations." K.S.A. 17-1701. The manner in which churches exercise authority over their financial affairs then depends upon their bylaws, meaning "different religious societies exercise authority over their financial and property affairs in different ways. [Citation omitted.]" *Gospel Tabernacle Body of Christ Church v. Peach Publishers & Co.*, 211 Kan. 420, 423, 506 P.2d 1135, *reh. denied* 211 Kan. 927 (1973).

A review of the statutes cited by the Foundation, K.S.A. 17-1712 to K.S.A. 17-1752, shows a variety of statutes enacted over the decades to deal with abandoned property of certain churches. At least some of the specified churches, such as Baptist and Congregational, appear to lack a hierarchical structure. See 4A Scott on Trusts § 397.3, p. 442 (identifying Baptist and Congregational churches as those with "a congregational government"). It is understandable that in such cases the legislature would step in to provide a remedy for abandoned property where none existed through a "parent hierarchical church." *Church of God in Christ v. Board of Trustees*, 26 Kan. App. 2d 569, 580, 992 P.2d 812 (1999), *rev. denied* 268 Kan. 885 (2000). Courts have recognized, in contrast, that the United Methodist Church has a hierarchical structure. See 4A Scott on Trusts § 397.3 pp. 441-42; *Emberry Community Church v. Bloomington Dist.*, 482 N.E.2d 288, 293 (Ind. App. 1985).

It is uncontroverted that the Conference took the Church's assets.

"Where a local religious group of church members have affiliated . . . with similar religious groups in a general conference in conformity with the rules and ordinances constituting the ecclesiastical law of that denomination, the right of dominion, control and disposal of church property no longer used or useful for local church purposes is governed by church law." *United Brethren, Etc. v. Mount Carmel Community Cemetery Ass'n*, 152 Kan. 243, Syl. ¶ 1, 103 P.2d 877 (1940).

In such a case, civil courts will take jurisdiction only "to assure the regularity of business practices and the right of private use and

ownership of property." *Church of God in Christ,* 26 Kan. App. 2d 569, Syl. ¶ 2.

We see no legal impediment to the Conference taking the Church's assets. The Church's remainder interest in the Trust was among those assets. The Conference therefore holds the Church's remainder interest.

Reversed and remanded with directions to the district court to order distribution of the Church's share of the Trust proceeds to the Conference.